IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MILOUS BROWN, | ) | Case No. 4:15-cv-1782 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| MICHELE MILLER, Warden, et al. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondents. | ) | |
| | ) | |

I.      **Introduction**

Petitioner Milous Brown, Ohio Inmate A630-569, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254.[1] On July 1, 2016, I recommended that the court dismiss Brown's petition in its entirety on the ground that he had procedurally defaulted each of his grounds for relief.[2] The court adopted that recommendation, in part, dismissing the fifth, sixth and seventh grounds of Brown's petition.[3] But the court concluded that Brown's first through fourth grounds for relief suggested clear issues of cognizability that would best be addressed on the merits.[4] Upon the Court's order, Respondent Warden, Michelle Miller, filed a return of writ[5] and Brown filed a traverse.[6]

---

[1] ECF Doc. 1
[2] ECF Doc. 9
[3] ECF Doc. 11, Page ID# 482
[4] ECF Doc. 11, Page ID# 481
[5] ECF Doc. 12
[6] ECF Doc. 14

Because the first four grounds of Brown's petition do not present cognizable claims and/or otherwise fail on the merits, I recommend that the court dismiss all remaining portions of Brown's petition.

## II.     Relevant Factual Background

The Ohio Court of Appeals for the Seventh Appellate District, set forth the following facts on direct appeal:

{¶3}  The State's first witness was the victim C.W. She testified that she was eight years old in the early summer of 2006 and lived in Campbell, Ohio, with her mother and her step-father at the time. She knew Brown as a family friend through Julie Mulac, who lived with Brown nearby. C.W. had been to their house fifteen to twenty times prior to the incident giving rise to this case and not again thereafter.

{¶4}  C.W. further testified that sometime after Memorial Day but before her birthday on July 20th, 2006, Brown, Mulac, and some of Mulac's children came to C.W.'s house to go swimming. When everyone was inside of the house, C.W. and Brown were alone outside in the pool. Brown picked her up by grabbing her from behind, placing his left arm over her chest and moving his right arm towards the bottom of her bathing suit. Brown then moved her bathing suit aside and put his fingers into her vagina. C.W. broke away from him screaming for her mother. C.W.'s mother met her at the back doorway of the house. C.W. did not tell her mother what happened immediately. She was afraid her mother might have "freaked out and just been really scared or upset about it." C.W.'s mother told Mulac and Brown it was time for them to go and they left.

{¶5}  C.W. told her mother about the incident a few days later by writing it down on a piece of paper and giving it to her mother. She then told her mother what happened and her mother called the police. C.W. talked to someone at the Campbell Police Department and Children Services. C.W. ended her direct testimony by identifying Brown as the perpetrator.

{¶6}  On cross examination C.W. testified that prior to the incident four of the children and Brown were in the pool, and she confirmed that the only two people outside at the time of the incident were Brown and herself. Brown was the only adult to get into the pool. C.W. was not taken to a doctor for examination and only spoke to the police and Children Services.

{¶7}  Sergeant David Michael Taybus of the Campbell Police Department testified that he was called to the victim's home in regards to a sexual incident, either imposition or rape. Once informed that the matter involved a child, he

called Children Services pursuant to department protocol. He took the initial report from C.W.'s mother and took the handwritten note, but he never spoke to C.W. and his involvement with the case ended.

{¶8}  Lenore Blanton, retired investigator from the Mahoning County Children Services abuse unit, testified that she conducted a home visit and spoke with C.W., who disclosed to her the details of the incident. C.W. was not taken to the Child Advocacy Center due to the fact that three to four weeks had passed by the time Blanton had talked to C.W. Blanton forwarded all the information she had collected to the Campbell Police Department and had no other involvement in the case.

{¶9}  The State next presented the testimony of child abuse pediatrician, Dr. Paul McPherson. He testified that he had never met C.W., did not treat her, and never saw the file.  Instead, McPherson answered generalized questions about child sexual abuse based upon his training, education and experience. McPherson testified that the decision to have a child submit to a sexual assault examination is made on a case-by-case basis. He also described the concept of delayed disclosure, and that it is more likely to occur when the victim knew the perpetrator.

{¶10}  The State's final witness was Sergeant TJ Assion who testified that in the Mahoning County Jail each inmate is assigned a pin number during booking to determine the phone calls placed by that individual. Assion identified a disk of recorded phone conversations made by Brown while he was in jail; select calls were then played for the trial court.

{¶11}  The defense presented one witness, Julie Mulac, who dated Brown from May 2003 until January 2012. They have one child together. Mulac testified that she, Brown and her five children went to the victim's home to swim on May 27, 2006, at about noon, and they stayed until about six or seven that evening. Brown never got in the pool; he would toss the children in by grabbing an arm and a leg and throwing them, which was the only interaction that she saw between Brown and C.W.  Mulac said C.W. did not scream or call for her mother.

{¶12}  On cross, Mulac admitted to spending a lot of time talking about the case and getting people to cooperate as witnesses. Brown instructed her to contact C.W. to "find out her angle." Mulac contradicted her earlier testimony and admitted seeing Brown in the swimming pool. Mulac also admitted that she told Brown in a phone conversation that it was good that she was dating someone else now so the prosecutor could not say that the only reason she was testifying was due to her relationship with him. Regarding the incident with C.W., Brown told her that "he didn't remember what happened."[7]

---

[7] ECF Doc. 5-1 at Ex. 13

### III.    Relevant State Procedural History

On May 28, 2009, a Mahoning County grand jury issued an indictment charging Brown with two counts of gross sexual imposition with a victim less than 13 years old, in violation of Ohio Rev. Code § 2907.05(A)(4)(B), and one count of rape with a victim less than 13 years old, in violation of Ohio Rev. Code 2907.02(A)(1)(b)(B).[8]  Brown pleaded not guilty to the charges.[9] The State later filed a Bill of Particulars stating the charges with more specificity.[10]

Brown moved for separate trials on each count, arguing that he would be severely prejudiced if the counts were tried together.[11]  The State opposed the motion for severance.[12]  On August 26, 2010, the court granted, in part, Brown's motion to sever.[13]  The trial court ordered that Counts One and Two for gross sexual imposition be jointly tried but severed the Count Three rape charge. The current petition involves only Count Three.

Brown waived his jury trial right, and Count Three was tried to the court.  The court found him not guilty of rape, but guilty of the lesser included offense of gross sexual imposition.[14]  The court sentenced Brown to serve a five year prison term for that offense consecutive to two earlier-imposed five year consecutive prison terms on Counts One and Two, for an aggregate sentence of 15 years.[15]  The court further found that the Count Three sentence was a mandatory sentence because of Brown's convictions of gross sexual imposition on the severed Counts One and Two.  Brown was adjudged to be a Tier II Sex Offender.[16]

---

[8] ECF Doc. 5-1 at Ex. 1
[9] ECF Doc. 5-1 at Ex. 3
[10] ECF Doc. 5-1 at Ex. 4
[11] ECF Doc. 5-1 at Ex. 5
[12] ECF Doc. 5-1 at Ex. 6
[13] ECF Doc. 5-1 at Ex. 7
[14] ECF Doc. 5-1 at Ex. 8
[15] ECF Doc. 5-1 at Ex. 9
[16] Id.

Brown is incarcerated at the Belmont Correctional Institution pursuant to a journal entry issued by the Mahoning County, Ohio, Court of Common Pleas on June 14, 2012 on Brown's conviction for gross sexual imposition.

Brown filed a direct appeal, a petition to pursue a delayed appeal, and a petition for post-conviction relief pursuant to Ohio Rev. Code. § 2953.21.  Brown's post-trial procedural history is more thoroughly described in my initial report and recommendation; it need not be repeated here because it does not bear upon the disposition of his remaining grounds for relief.

## IV.     Federal Habeas Corpus Petition

On September 2, 2015, Brown filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Grounds one through four of his petition assert:

**GROUND ONE:**
The trial court erred and abused its discretion by sentencing appellant to a mandatory term when enhancing convictions were convictions separately tried but contained in the same indictment upon which appellant was tried in this case.

**SUPPORTING FACTS:**
The petitioner was indicted in 2009 and was not brought to trial until 2011.  The court split the case into two separate trials, one in April of 2011, and the other in June of 2012.  Both trials were from the same indictment and both trials were the same case number, 09 CR 557.

In the first trial the petitioner was found guilty and in the second trial the court used the conviction from the first trial as evidence to enhance the petitioner's sentence, even though it was one indictment and one case number.  (this is one of the reasons why the petitioner will be filing a successive habeas petition for the first trial which is still in the Ohio Supreme Court.)

**GROUND TWO:**

The Petitioner's conviction and sentence violate U.S. Const. Amend. XIV and Ohio Const. Art. I, § 16 because there was an insufficiency of evidence of sexual contact and no ability to defend against the lesser imposition charge.

**SUPPORTING FACTS:**

The petitioner was indicted on a rape charge when, at trial, the judge found there was not enough evidence to sustain a conviction of rape so he dropped it to a GSI. A charge of which the petitioner had not prepared for. The question of sexual contact is the same in both the rape charge and the conviction for GSI. The only evidence presented by the prosecution witnesses and the witness presented by the defendant. There were other witnesses that refuted the alleged victim's testimony but defense counsel did not call them or interview them. Those witnesses are the subject of the petitioner's ineffective assistance of counsel claim presented later. A review of the evidence presented will show that this conviction could not be sustained.

**GROUND THREE:**

The verdict of guilty of gross sexual imposition was against the manifest weight of evidence.

**SUPPORTING FACTS:**

The petitioner was indicted on a rape charge when, at trial, the judge found there was insufficient evidence to sustain a conviction of rape. The judge dropped the conviction to gross sexual imposition. The record is devoid of any evidence to satisfy that the verdict is just when viewed to the guidelines for a manifest weight of evidence claim. There is no uncontradicted evidence, nor is there any reliability to the alleged victim's testimony.

**GROUND FOUR:**

Trial counsel was ineffective because he did not call the alibi witnesses provided by the petitioner and also on court record when the petitioner filed his list of witnesses to subpoena. Trial counsel was ineffective for not even interviewing the alibi witnesses nor interviewing the State's witnesses. Sixth Amendment of the United States Constitution.

**SUPPORTING FACTS:**

Many witnesses, as shown in the affidavits, wanted to testify on the petitioner's behalf. These witnesses would have shown further irregularities in the alleged victim's testimony. When viewed against the evidence the state provided, the overwhelming evidence was in the petitioner's favor. Most of these witnesses tried contacting trial counsel but was never able to reach him and their calls were never returned. If trial counsel had interviewed the state's witnesses he would have seen

6

the value in presenting alibis to the petitioner's whereabouts during the party where the fabricated incident is supposed to have occurred.  If counsel had done the job he trained for then the petitioner would never have been convicted or possibly never went to trial.

## V.  Applicable Law

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court."  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d).  The Court of Common Pleas of Mahoning County sentenced petitioner and Mahoning County is within this court's geographic jurisdiction.[17]  Accordingly, this court has jurisdiction over petitioner's § 2254 petition.

### B.  Cognizable Federal Claim

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.*  To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all."  *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law.  *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983).  A federal habeas court does not

---

[17] ECF Doc. 5-1 at Ex. 9

function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

### C.      AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Brown's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting (Michael) *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow,* 134 S. Ct. 10, 15 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id*.

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

28 U.S.C. § 2254(d).

Habeas courts review the "last explained state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions."  *White v. Woodall,* 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  See, e.g., *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; see also *Rice v. White,* 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; see also *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id*. at 103.  This is a very high standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 102.

## VI.  Analysis

### A.  Ground One

Brown asserts that the trial court abused its discretion by treating a separately – but earlier – tried pair of charges from the same indictment as a "prior conviction," and using that conclusion to enhance the punishment on his Count Three conviction.  In essence, Brown argues that the state court misapplied the state's sentencing laws.

The Ohio Court of Appeals rejected Brown's argument on this point, holding:

[t]he plain language of R.C. 2907.05(C)(2) dictates that the trial court is required to impose a mandatory prison term due to Brown's previous convictions for gross sexual imposition in 2011.  Although the events giving rise to the charge in the present case may have occurred prior in time to those in his 2011 convictions, the statute does not make a distinction or provide for an exception.

The charges in Brown's indictment arose from conduct that allegedly occurred in 2006 and 2009. Brown sought and was granted separate trials on these charges. The court of appeals reasoned that severing the charges had the practical effect of creating two separate *de facto* indictments. As a result, the appellate court concluded that the trial court did not err by using the convictions from the first trial to enhance the sentence imposed on Brown for his Count Three conviction. The court of appeals also noted that defendant's reliance on *State v. Smith*, 104 St.2d 106, 2004-Ohio-6238, 818 N.E. 2d 283, was misplaced because *Smith* dealt with specifications contemporaneously charged in the same indictment.  Moreover, *Smith* had effectively been superseded by statute.[18]

---

[18] ECF Doc. 5-1 at Ex. 13

Brown again relies on *Smith* in his habeas petition arguing that the trial court improperly sentenced him and thereby violated his due process rights.  However, the state court sentenced Brown in accordance its interpretation of state sentencing laws.  Even if this court agreed with Brown that the state court misinterpreted those laws, "[f]ederal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  The federal court is bound by the state court's interpretations of state law.  *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983).  As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949). And "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)(quoting *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994).

Brown also cites several federal cases dealing with unfair trial and due process issues. *See e.g. Bruton v. United States,*  391 U.S. 123 (introduction of accomplice's out-of-court confession violated defendant's Sixth Amendment right to cross examine witnesses); *Estes v. Texas,* 381 U.S. 532 (defendant was denied due process of law by massive pretrial publicity and excessive televising and broadcasting of his trial); *Offutt v. United States,* 348 U.S. 11 (petitioner's contempt conviction was reversed because trial judge had permitted himself to become personally embroiled with petitioner); *Tumey v. Ohio,* 273 U.S. 510 (defendant's due process rights were violated when the mayor who presided over his case had a pecuniary interest in his conviction).  These cases have no application to the factual or legal issues asserted in Brown's petition.

12

Brown moved for separate trials on his indicted charges, and the trial court granted that motion.  If the trial court had refused to sever Brown's counts, he might have had an argument that he had 1) received an unfair trial; and 2) that the cases he cited actually support an argument that the state courts made rulings that were contrary to or inconsistent with clearly established federal law.  However, Brown does not argue that he received an unfair trial.  Rather, he argues that he was forced to *choose* between receiving a fair trial and having his sentence affected by a prior conviction.  The error in Brown's logic is that he has no federal right to a sentence involving no prior convictions.  In other words, he had a right to a fair trial, and the order granting his motion for separate trials protected that right.  He did not have a due process (or any other federal) right to a shorter sentence involving no prior convictions.  And, if Brown's first trial had resulted in an acquittal, there would have been no prior convictions for the sentencing judge to consider.  Thus, Brown was not really placed in a "Catch 22" at all.  Brown's due process rights were not impacted by the trial court's consideration of a prior conviction when sentencing him.  Brown has identified no clearly established federal law abridged by the state courts' sentencing decisions.  The Supreme Court cases cited by Brown are inapplicable to the issue presented in the first ground of Brown's petition.

To summarize, the first ground of Brown's petition asserts that the trial court abused its discretion in sentencing him.  His sentence involved only the application and interpretation of state law.  Brown has not demonstrated that his sentence was contrary to or involved an unreasonable application of clearly established federal law.  Accordingly, in addition to my earlier recommendation that Ground One be dismissed as procedurally defaulted, I recommend that it be dismissed because it presents no cognizable claim for habeas review.

13

B.     Ground Two

Brown asserts that there was insufficient evidence to convict him of gross sexual imposition and that he was unprepared for and, therefore, unable to defend against this lesser included charge.  Federal habeas review is available for insufficient evidence arguments. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). States have the power to determine the elements of criminal offenses, *See Engle v. Isaac,* 456 U.S. 107 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting "without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  (Emphasis in original)  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilty or not guilty decision, but whether it made a rational decision to convict or acquit. *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Brown's sufficiency claim, federal habeas review requires deference at two levels.  "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA." *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we

14

must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that

"'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a

nearly insurmountable hurdle.'"  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d

703, 710 (7th Cir. 2009)).

Brown contends that there was insufficient evidence to convict him of gross sexual

imposition.  The last court to consider Brown's insufficiency argument rejected it, holding:

{¶14}  We will address Brown's assignments of error out of order, as our resolution of any particular one may render the remaining moot.  In his second of three assignments of error, Brown asserts:

{¶15}  Appellant's conviction and sentence violate U.S. Const., [A]mend. XIV and Ohio Const., [A]rt. I., § 16 because there was an insufficiency of evidence of sexual contact and no ability to defend against the lesser gross sexual imposition charge.
"
{¶16}  "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.  In our review of sufficiency of evidence, we must "assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390 (Cook, J., concurring).  "The test of sufficient evidence is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense be yond a reasonable doubt." *State v. Bulin,* 7th Dist. 09 BE 27 2011-Ohio-3398, ¶57 citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2e 717 (1st Dist. 1983).  A reviewing court should not reverse the verdict of the trier of fact unless it finds that reasonable minds could not reach that conclusion.  *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶17}  Brown argues that there was no proof that he touched the erogenous zone of C.W. for the purpose of arousal or gratification.  Brown was convicted of gross sexual imposition, which provides that no person shall have sexual contact with another, not their spouse, who is less than thirteen years old, whether or not the

offender knows the victim's age.  R.C. 2907.05(A)(4).  In order to convict Brown of gross sexual imposition, the State must prove beyond a reasonable doubt that sexual contact occurred.  Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶18}  Considered in a light most favorable to the prosecution, the testimony presented at trial established beyond a reasonable doubt that Brown touched an erogenous zone, specifically the vagina, of C.W., who was eight years old at the time the incident occurred, as required by R.C. 2907.05(A)(4).  However, pursuant to R.C. 2907.01(B) the State must also prove that the sexual contact was for the purpose of sexual gratification or arousal.  Brown disputes that this was proven.

{¶19}  "Whether that touching was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact."  *State v. Mundy,* 99 Ohio App.3d 275, 279, 650 N.E.2dc 502 (2d. 1994).  "While purpose of sexual arousal or gratification is an essential element of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification."  *In re. D.S.,* 160 Ohio App.3d 441, 444, 688 N.E. 2d 545.

{¶20}  C.W. testified that Brown was alone with her outside in the swimming pool.  Once everyone went into the house, Brown picked her up from behind, putting his left arm over her chest and moved his right arm down towards the bottom of her bathing suit.  Thereafter, he moved the bottom of her bathing suit and his fingers went in towards her "private area."  C.W. testified that she was afraid and that he "kept holding me" and she "finally broke off of him" and "was screaming for her mother."  Afterwards, Brown said nothing and "stared off blankly."

{¶21}  The evidence demonstrated the type, nature and circumstances surrounding Brown's contact with C.W. was such that the trial court reasonably concluded that Brown touching C.W.'s vagina was not accidental or inadvertent; rather it was a deliberate, premeditated act.  That evidence is sufficient to support a reasonable inference that Brown's contact with C.W. was for the purpose of sexual arousal or gratification.

{¶22}  Brown additionally argues that the conviction on the lesser-included offense of gross sexual imposition deprived him of the opportunity to argue to the trial judge why there was no evidence of sexual contact.  He contends that there is no legal middle ground; either the victim's version of the incident occurred or nothing happened. This argument is unpersuasive.  An indictment on a greater offense necessarily and simultaneously charges a defendant with lesser-included offenses as well.  *State v. Lytle,* 49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990).

Implicit in the charge of rape, was the lesser-included offense of gross sexual imposition. Brown had sufficient notice that he could be found guilty if the evidence showed that he committed gross sexual imposition.

{¶23}  Further, as the State points out, Brown argued from the onset that the incident did not occur, that he was never in the pool, and he was never left alone with C.W. Trial counsel's strategy focused on disproving that the incident occurred at all, not the manner in which Brown may or may not have touched C.W. "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Carter,* 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965. Accordingly, this assignment of error is meritless.

Ohio Rev. Code §2907.05(A)(4) makes it unlawful for a person to have sexual contact with a person less than thirteen years of age. Section §2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Thus, to support a conviction of gross sexual imposition, the state was required to prove beyond a reasonable doubt that Brown touched an erogenous zone on C.W. and did this with a purpose was to sexually arouse or gratify either person.

The state presented evidence that Brown touched C.W. in the vaginal area when she was eight years old. Thus, there was evidence to support the first element of gross sexual imposition. Brown argues that there was no evidence to support the second element – purpose of sexual arousal or gratification. Absent admission by the accused, proof of such an element is rarely available. For this reason, purpose may be inferred from the type, nature and circumstances surrounding the contact; there is no requirement that there be direct testimony regarding sexual arousal or gratification. *State v. Mundy,* 99 Ohio App.3d 275, 288, 650 N.E.2d 502 (1994); *In re Anderson,* 116 Ohio App.3d 441, 444, 688 N.E.2d 545 (1996). Given C.W.'s testimony regarding the nature and circumstances surrounding the sexual contact, a rational trier of fact could have inferred that the purpose of the contact was for sexual arousal or gratification.

17

Brown's argument that there was insufficient evidence to convict him of gross sexual imposition lacks merit.  Both the jury and the state court of appeals concluded that the evidence of unlawful sexual contact was believable.  This court must defer to those findings.  Even if deference weren't required, the court cannot say that no rational jury could have found Brown guilty of gross sexual imposition on the evidence presented.  To the contrary, the evidence described in the record was sufficient.

Brown asserts a second argument in Ground Two – that he was unable to defend against the lesser included offense of gross sexual imposition.  Brown's bench trial went forward on the Count Three charge of rape.  The judge found Brown not guilty of rape but guilty of the lesser included offense of gross sexual imposition. Brown argues that it was improper for the trial court to find him guilty of the lesser included offense.  However, as pointed out by the court of appeals and respondent, Brown's defense at trial was that the incident with C.W. never occurred.  This defense, if believed by the trier of fact, would necessarily have acquitted Brown of both the rape charge and the lesser included offense of gross sexual imposition.  Brown has not explained how, given his position that the unlawful sexual contact never occurred, he was  prevented from defending the sexual imposition charge.  The lesser included offense was implicit in the charge of rape and Brown had sufficient notice that he could be found guilty of the elements necessary to establish gross sexual imposition.  *State v. Lytle,* 49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990).

Brown's implicit due process argument that he was unable to defend against the lesser included charge of gross sexual imposition lacks merit.  He has identified no clearly established federal law that was violated by requiring him to go to trial on both the indicted charge and the necessarily included lesser offenses.  Therefore, in addition to my recommendation that Ground

Two be dismissed as procedurally defaulted, I recommend that it be dismissed because a rational trier of fact could have – and did – find that Brown was guilty of gross sexual imposition and the Ohio court of appeals reasonably determined that there was sufficient evidence to support this conviction.

### C. Ground Three

The third ground of Brown's petition is that his guilty verdict of gross sexual imposition was against the manifest weight of the evidence. Arguments that convictions are against the manifest weight of the evidence do not present federal issues. *See Tibbs v. Florida,* 457 U.S. 31, 45 (1982). Brown concedes that Ground Three does not present an issue for habeas review.[19] Thus, in addition to my recommendation that Ground Three be dismissed as procedurally defaulted, I recommend that it be dismissed because it does not present a cognizable claim for federal habeas review.

### D. Ground Four

Brown asserts that his trial counsel was ineffective in failing to call alibi witnesses to testify at his trial. The state court of appeals denied Brown's application for delayed appeal because he had failed to establish good cause for the untimeliness of his application. However, the court also addressed the merits of Brown's ineffective assistance claim, stating,

> {¶8} Even if Brown were able to establish good cause for the delay, he has failed
> to raise a genuine issue as to whether he was deprived of the effective
> assistance of counsel on appeal. Brown states that his appellate counsel was
> deficient because he "failed to raise winning issues." Brown faults his
> appellate counsel for failing to argue in the direct appeal that his trial
> counsel was ineffective; discussing his trial counsel's alleged deficient
> performance, specifically for the failure to call several alibi witnesses during
> the trial. Brown attached affidavits to the present application of the five
> witnesses he wanted called at trial. "[G]enerally, an attorney's

---

[19] ECF Doc. 14, Page ID# 767.

> determination of which witnesses to call falls within the realm of trial
> strategy.  Further, a court will not second-guess the trial attorney's tactical
> decisions.  It follows that the mere failure to call witnesses does not render
> counsel's assistance ineffective absent a showing of prejudice." *State v.*
> *Hector,* Montgomery App. No. 18653, 2002-Ohio-1200, 2002 WL 360649,
> at *4 (internal citations omitted).
>
> {¶9}  Brown did not argue any prejudice from trial counsel not calling these
> witnesses but merely states that the testimony would "further discredit" the
> testimony of the victim.  Brown makes conclusory statements but provides
> no legal basis as to how there would be a reasonable probability of success
> on appeal if those witnesses had testified.[20]

To prevail on his ineffective assistance claim, Brown must show that the state court's conclusion was contrary to or unreasonably applied *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  *Strickland* established the well-known two-pronged test for ineffective assistance of counsel claims: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id*. at 687.

The proper standard for attorney performance is "reasonably effective assistance."  *Id.* Brown must demonstrate that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688.  The prejudice prong requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Furthermore, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689.  Brown cannot overcome that presumption.

---

[20] ECF Doc. 5-1 at Ex. 21, Page ID# 213.

Brown attached five affidavits to his application for reopening his direct appeal.[21]  Each of the affidavits contains nearly identical information.  Each affiant swears that he or she did not see Brown alone with anyone at the party; did not see Brown alone with the victim at any time; did not see Brown in the swimming pool; never heard the victim scream for help and didn't notice her showing any discomfort or fear towards anyone there; and didn't see Brown in swimming trunks or other swimming apparel.  Initially, it can readily be seen that  these statements do not provide alibis for Brown because, even if believed, they only indicate that the affiants didn't *see* Brown have sexual contact with the victim.  They do not put Brown at a different place or otherwise prove that it was impossible for him to have had sexual contact with C.W.

Brown's argument is further flawed.  Brown's counsel called one of the affiants, Julie Mulac, to testify at Brown's trial.  Ms. Mulac was Brown's ex-girlfriend and the couple had a child together.  Ms. Mulac testified that she "thought" she had been seated outside, six feet from the pool, the entire time Brown was at the victim's house.[22]  She denied seeing any wrongdoing on Brown's part.  However, Ms. Mulac admitted that, in the days leading up to the trial, Brown had talked to her from jail for over 26 hours and that he had been anxious for her to contact other individuals who had been involved in the case.[23]  The credibility of Ms. Mulac's testimony was called into question during cross-examination and the trier of fact evidently rejected it.

Although there are four other affidavits from "alibi" witnesses, they all make essentially the same points Ms. Mulac testified to.  And the affiants are all closely related to Ms. Mulac.  Justin Mulac is her son; Joyce Pratt is her sister; Drake York and Elaina Mulac are Joyce Pratt's

---

[21] ECF Doc. 5-1 at Ex. 18, Page ID# 193-197.
[22] ECF Doc. 13-1, Page ID# 654-655.
[23] ECF Doc. 13-1, Page ID# 660.

children – Ms. Mulac's niece and nephew.  Even if they had testified, the judge could have easily

concluded that Ms. Mulac had coached them.  Indeed, Ms. Mulac admitted that, during their 26

plus hours of telephone conversations, she and Brown discussed her "working on the case,

getting cooperation from people."[24]  The prosecutor even asked if Ms. Mulac had worked with

Joyce Pratt to make sure their stories would be the same for the judge.[25]  Calling these additional

witnesses to corroborate Ms. Mulac's testimony might have confirmed the prosecutor's theory –

that Ms. Mulac was working behind the scenes to get her family members to testify for Brown.

Worse yet, their testimony could have actually detracted from Ms. Mulac's  credibility.  Three of

the affiants were children in 2006 and the victim testified that they were not present when the

incident occurred.[26]  Ms. Mulac may have been defendant's best witness; the other witnesses

may have contradicted or called into question her recollection of the events that happened six

years earlier.  Given these contextual vagaries, the court has no basis upon which to conclude

that the decision not to call the purported alibi witnesses wasn't sound trial strategy.  Brown has

not produced evidence adequate to overcome the 'sound trial strategy' presumption.

     Even if Brown could show that his attorney's performance was deficient, he cannot show

any prejudice arising from the non-submission of testimony from his purported alibi witnesses.

The affidavits he submitted make it appear that the other "alibi" witnesses would have only

parroted Ms. Mulac's testimony.  Thus, the information they would have provided was already

admitted into evidence.  Essentially, Brown's argument is that even though the trial judge heard

Mulac's testimony, he would have reached a different conclusion if he had heard those same

points reiterated by four more times.  This argument fails.  Non-presentation of cumulative

---

[24] Id.
[25] ECF Doc. 13-1, Page ID# 661.
[26] ECF Doc. 13-1, Page ID# 549.

evidence cannot establish the prejudice required under the *Strickland* test.  *See generally, Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011)("Obviously, a petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial."); *United States v. Shcaflander*, 743 F.2d 714, 718-19 (9th Cir. 1984). Brown failed to show that these other witnesses would have had any impact on the outcome of his trial.  Further, Brown cannot demonstrate that the state courts' determination that he failed to prove prejudice under *Strickland* was objectively unreasonable. Consequently, he has failed to show that the state court's conclusion was contrary to or an unreasonable application of *Strickland v. Washington*.

Therefore, in addition to my recommendation that Ground Four be dismissed as procedurally defaulted, I recommend that it be dismissed because Brown has not shown that the state court's rejection of his ineffective assistance claim was contrary to or an unreasonable application of federal law.

## VII.  Recommendation Regarding Certificate of Appealability

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the

applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

In my previous report, I recommended that all of Brown's grounds for relief be dismissed because they were procedurally defaulted and that no certificate of appealability be issued. Grounds One through Four of Brown's petition also lack merit and/or fail to present cognizable issues for habeas review. If the Court accepts the foregoing recommendation, Brown has not made a substantial showing of a denial of a constitutional right. I recommend that no certificate of appealability issue as to Brown's petition.

24

## VIII.    Recommendation

Because Petitioner Brown has presented only claims that are non-cognizable in a federal habeas proceeding or otherwise lack merit, I recommend that the Court dismiss the first, second, third and fourth grounds of Brown's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

Dated: August 31, 2017

Thomas M. Parker
U.S. Magistrate Judge

## IX.    Notice to Parties Regarding Objections:

Local Rule 73.2 of this court provides:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).